# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDRA T. WHIITE, | No. 2:16-cv-0706-TLN-CMK |
| Plaintiff, | |
| vs. | <u>FINDINGS AND RECOMMENDATION</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding pro se, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 15), defendant's cross-motion for summary judgment (Doc. 16) and plaintiff's reply (Doc. 17).

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on July 29, 2013, alleging an onset of disability on July 28, 2013, due to disabilities including seizure disorder (Certified administrative record ("CAR") 78-79, 86-88, 98-99, 194-95, 199-203). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on July 27, 2015, before Administrative Law Judge ("ALJ") Robert C. Tronvig, Jr. In an October 23,

1

2015, decision, the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

    1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

    2.     The claimant has not engaged in substantial gainful activity since July 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.     The claimant has the following severe impairments: seizure disorder (20 CFR 404.1520(c) and 416.920(c)).

    4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| 1 | 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limits: she must avoid hazards such as moving machinery and heights. |
| 2 |   |   |
| 3 |   |   |
| 4 | 6. | The claimant is capable of performing past relevant work as a tax technician. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). |
| 5 |   |   |
| 6 |   |   |
| 7 | 7. | The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |
| 8 |   |   |

(CAR 19-28). After the Appeals Council declined review on February 26, 2016, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

Plaintiff argues the ALJ's opinion is wrong because she cannot work and her condition is getting worse. She also argues that the jobs the vocational expert found her capable of do not match her limitations and skills. She further contends that she has never been cleared medially to return to work, and that the medical evaluations were rendered prior to receiving all of her medical records. The undersigned interprets these arguments as a challenge to the ALJ's evaluation of the medical opinions, the residual functional capacity (RFC) assessment, and the vocational expert's testimony.

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is unable to do his or her previous work and cannot, considering his or her age, education and work experience, engage in *any* other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation (steps 1 through 4). See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 CFR §§ 404.1520(f) and 416.920(f). Once the claimant establishes a prima facie case of disability, the burden of going forward with the evidence shifts to the Commissioner. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.

4

1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989). The Commissioner has the burden to establish the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background (step 5). In an appropriate case, the Secretary may meet this burden through application of the medical-vocational guidelines set forth in the regulations.[2] See 20 CFR Pt. 404, Subpt. P, App. 2; Heckler v. Campbell, 461 U.S. 458 (1983); Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). If the guidelines do not accurately describe a claimant's limitations, the Commissioner may not rely on them alone to show availability of jobs for the claimant. See Desrosiers v. Secretary, 846 F.2d 573, 577 (9th Cir. 1988).[3]

### A. Medical Opinions

As to the medical evidence, after setting forth the treatment evidence in the record and finding plaintiff's seizure disorder to be a severe impairment, the ALJ found plaintiff had the residual functional capacity to perform a full range of work with limitations as to hazardous situation such as moving machinery and heights. In making this determination, the ALJ stated:

> the undersigned notes that the claimant has not provided treating opinion evidence from a physician that she is precluded from performing work activity. The record does include a Work Status Report from Amy Maureen Oliver, MD who placed the claimant off work on August 12, 2013 (Ex. 1F). Similarly, in August 2013, Shirley Rigg, FNP stated that the claimant would be unable to preform her usual work duties for 60 days (Ex. 3F, 4F/7). These statements are given little weight. Dr. Oliver's statement was

---

[2] For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

[3] However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of guidelines. Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Commissioner will be required to obtain expert vocational testimony regarding the availability of other work. See, e.g., Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985). Pain has been recognized as a non-exertional limitation which can significantly limit ability to perform basic work skills. See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).

| | |
|---|---|
| 1 | based on a brief, one-time visit to emergency care and not on a treating relationship. These opinions provide no specific |
| 2 | functional work limitations. Additionally, temporary disability is not contemplated in the regulations. Disability is an administrative |
| 3 | finding requiring familiarity with the Regulations and is reserved to the Commissioner (20 CFR 404.1527(e), 416.927(e) and Social |
| 4 | Security Ruling 96-5p). |

        based on a brief, one-time visit to emergency care and not on a treating relationship. These opinions provide no specific functional work limitations. Additionally, temporary disability is not contemplated in the regulations. Disability is an administrative finding requiring familiarity with the Regulations and is reserved to the Commissioner (20 CFR 404.1527(e), 416.927(e) and Social Security Ruling 96-5p).

        Moreover, these statements conflict with Nurse Rigg's opinions of August 2013 and October 2013 that the claimant could perform work that does not require climbing heights/ladders or operating/driving machinery such as a forklift. Nurse Rigg stated that the claimant could work in a clerical position (Ex. 4F/12, 6F).

        Consistent with 20 CFR 404.1513(d)(4), 416.913(d)(4) and SSR 06-03p, these opinions, though provided by a non-medical source, are given great weight because they are consistent with the totality of the evidence available in the record. Nurse Rigg was a treating source and her opinions were based on direct examination, personal observation and objective testing.

        State agency medical consultants A. Pan, MD and S. Amon, MD agreed with this assessment and found that the claimant should avoid hazards at work such as unprotected heights and dangerous machinery (Ex. 1A, 3A); these opinions are consistent with Nurse Rigg's assessment.

        These State agency medical consultants' opinions are given great weight because they are consistent with the opinion of the claimant's treating source. The consultants are familiar with Social Security rules and provide an assessment that is consistent with the claimant's functioning as discussed above.

        In reaching this conclusion, the undersigned acknowledges that the claimant has an impairment that causes some limitations of her ability to perform basic work activities. Indeed, the assessment of the claimant's residual functional capacity allows for many of her subjective complaints. As discussed above, however, the extent to which the claimant alleges an inability to perform any significant work activities on a sustained basis are not found to be fully credible when considered in light of the entirety of the evidence of record as a whole and specifically, as to Nurse Rigg's assessment.

(CAR 23-24).

        The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Here, plaintiff argues that her FNP took her off work, and she has never been cleared to return to work. She further contends that her condition is getting worse, her

medication has been increased, and the medical opinions were rendered before all of the medical records were available. Defendant counters that the ALJ properly addressed all medical source evidence in the record, including the properly rejected FNP's opinion that plaintiff could not work on a temporary basis.

As the ALJ noted, there is no opinion in the record from plaintiff's treating physician. The ALJ accepted her FNP opinion in so far as it was consistent with the record as a whole. To the extent plaintiff argues the state agency physician's opinions should not have been accepted because they were rendered prior to the record being completed, she fails to support that argument with any significant changes the later medical records show. The medical records submitted after the state agency physician opinions do show an increase in her medication, but that is the only change. The ALJ had all of the medical records, including the increased medication, prior to forming his opinion and the RFC. Plaintiff fails to show how the few visit to her neurologist, which do not contain significant treatment notations, would alter the opinions of the reviewing doctors. In addition, the state agency physicians had at least some of the medical records from plaintiff's neurologist, as the opinions note that plaintiff had a neuro consult on April 29, 2014 which was normal except a positive romberg test, and a negative MRI of the brain on May 7, 2014 (CAR 92). The undersigned finds nothing significant in any of the medical records after the state agency physician evaluations. Similarly, there is no error in the ALJ's treatment of the nurse practitioner's opinion. To the extent the FNP determined plaintiff could not work, that clearly was a temporary condition, as the notation specifically indicated it was for a period of 60 days. As the ALJ discussed, the FNP also determined that plaintiff was capable of working in a clerical position so long as it was not around hazards. The undersigned finds no error in the treatment of the medical evidence and opinions.

### B.    Residual Functional Capacity

Plaintiff next argues that she is unable to perform the activities the ALJ sets forth in the RFC. She contends that the ALJ found she could not perform some basic work activities,

and therefore erroneously found she has the ability to perform more complex duties. Similarly, she states that with her education, she should not be working at clerical jobs. Finally, she claims she is unable to handle the stress of the jobs.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 CFR §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.

The ALJ's RFC relies at least partially on the ALJ's credibility determination. Plaintiff does not specifically challenge the credibility finding. However, to the extent there is some contention that the analysis was erroneous, the undersigned finds no error.

The ALJ found plaintiff's statements as to the intensity, persistence and limited effects of her symptoms were not entirely credible, as follows:

> At the hearing, the Court requested a copy of her seizure log. The claimant supplied a "Seizure Schedule" showing a grand mal seizure on July 27, 2013 at the river and several "small" seizures, lost time and passing out episodes occurring per day requiring her to rest all day (Ex. 21E). While the record clearly establishes a history of treatment of seizures since July 2013, the frequency of the seizures she alleges is not supported by the treatment record.
>
> For example, the claimant's log shows several "Minor seizures" affecting her eyes, hearing, equilibrium, and legs between July 22 and July 27, 2013. On July 27, 2013, she reported a grand mal seizure at the river. On July 28, 2013, the claimant presented for treatment reporting the grand mal episode the day prior. There is no mention of any problems with her legs, equilibrium or other spells prior to the seizure on July 27 (Ex. 2F). Here, the record fails to document any complaints of minor motor seizure episodes as she described between July 22 and July 27 in her log. The claimant logged that she had several small seizures on July 28, 2013 and had to rest all day. Yet, this is inconsistent with the discussed emergency care visit of that same day.
>
> On August 7, 2013, she logged that she "lost" about 3 hours of time (Ex. 21E). She was seen in [sic] at Kaiser on August 11, 2013 in which she reported, "No seizure activity since last ED visit, no other complaints" (Ex. 7F/50) and again on August 13,

2013 when seen at Primary Care Clinic (Ex. 4F/8). She logged
minor seizures on September 5, 2013 affecting her speech, legs and
teeth and several small seizures on September 16, 2013 (Ex. 21E).
However, the clinic note dated September 19, 2013 stated merely
that "she has had some fatigued and maybe a mild seizure" (4F/4).

The claimant documents multiple events in her log between
October 2013 and March 2014. However, she sought no medical
care for these events.

Medical records document no further seizures until July 2015 when
she reported a petit-mal seizure (Ex. 14F/1). However, she
admitted she had stopped her medication at that time (Ex. 13F/1).
Otherwise, examinations reveal normal brain imaging and
neurologic functioning (Ex. 2F, 3F, 4F, 7F, 12F, 13F).

Treating neurologist Dr. Sheikh advised her to "maintain a Seizure
calendar and make a note of all seizure activity which should
include the date of seizure occurrence, aura if any, duration and all
other details regarding LOC and post seizure period." She was
also advised to "maintain an episode calendar and make a note of
all unusual/tremor like activity which should include the date of
occurrence, aura if any, duration, and all other details (Ex. 12F/5,
3, 13F/2, 11). The "Seizure Schedule" provided by the claimant
lacks some of this detail. Additionally the undersigned notes that
the Seizure Schedule she provided on July 20, 2015 is inconsistent
with earlier reports showing she had seizures approximately once
per month, or specifically on July 28, 2013, August 7, 2013,
September 16, 2013 and December 20, 2013 (Ex. 5E, 8E). The
accuracy of the "Seizure Schedule" is called into question.

(CAR 22-23).

The ALJ then addressed plaintiff's activities, which he found to be consistent with an ability to perform work activity. These activities included looking for work with the Asian Resource Center and Department of Rehab, engaging in some self-employment in both 2013 and 2014, running a non-profit and making crafts to sell online. She also cared for her brother's children for a year, then lived alone without any apparent difficulty. The ALJ found that "[o]verall, the above activities are consistent with the determination of an ability to perform work activity." (CAR 23).

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit

credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The undersigned finds no error. The ALJ set forth several sufficient reasons why plaintiff's testimony was not completely credible, including her daily activities and inconsistency in the records and treatment.  To the extent she contends she is unable to handle the stress of working, there is nothing in the record, nor does plaintiff identify anything in the record, to support her contention that she is unable to handle the stress of a normal work day.

Based on this credibility determination, and the medical opinions discussed above, the ALJ found plaintiff capable of performing a full range of work at all exertional levels, but she must avoid hazards such as moving machinery and heights.  As the undersigned finds no error in the credibility determination or the medical evaluation, plaintiff's argument that the RFC is inaccurate is not persuasive.

**C.    Past Relevant Work/Vocational Expert**

Finally, plaintiff argues that the determination that she is able to perform her past relevant work is erroneous.  This argument is based on the contention that the RFC is wrong and she is unable to perform work as the ALJ determined.  As the undersigned finds no error above, her argument is again unpersuasive.  To the extent she argues the vocational expert's testimony is wrong, the undersigned finds no support for her argument.

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Here, the ALJ found at step four that plaintiff was capable of performing her past relevant work.  As such, he found plaintiff failed to meet her

burden to show she has an impairment of such severity that she is unable to do her previous work. However, the ALJ went through the process of step five, and called a vocational expert to testify at the hearing. The ALJ set forth a hypothetical question based on the RFC discussed above. Based on that hypothetical question, the vocational expert testified that someone with those limitations could perform plaintiff's past relevant work. The vocational expert went further and testified that even with additional limitations, such a hypothetical person could perform several jobs in the national economy. Again, the undersigned finds no error.

## IV. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 15) be denied;

2. Defendant's cross-motion for summary judgment (Doc. 16) be granted; and

3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 28, 2017

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE